William E. Doeller and Catherine L. Doeller v. Commissioner.
Doeller v. Commissioner
Docket No. 4498.
United States Tax Court
1945 Tax Ct. Memo LEXIS 289; 4 T.C.M. (CCH) 225; T.C.M. (RIA) 45072; February 20, 1945
*289 Albert A. Jones, Esq., National Press Bldg., Washington, D.C., for the petitioner. Elmer L. Corbin, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: A deficiency in income tax for the year 1941 in the amount of $3,058.04 was determined against petitioners and is in issue here. The sole controversy is whether the profit resulting from the disposition of stock was a short term capital gain taxable in full by reason of a partial liquidation, or whether the transaction was a sale resulting in long term capital gain. [The Facts] All of the facts are stipulated and are hereby found accordingly. Petitioners filed a joint income tax return for the year in question with the collector for the district of Virginia. Lucius Investment Corporation, Ltd., was a Canadian corporation most of the stock of which was held through a wholly owned corporation by Lucius N. Littauer, an uncle of petitioner Catherine L. Doeller. On September 2, 1941, Catherine L. Doeller, sometimes hereinafter referred to as petitioner, transferred to Lucius Investment Corporation, Ltd., the 80 shares of stock which she owned in that corporation, receiving in exchange therefor some *290 cash and the balance of the purchase price in securities. There is no dispute as to the basis of this stock nor as to the amount of profit resulting. On its own income tax return the corporation reported the transaction as a purchase and sale, but it filed an information return treating it as a liquidating dividend. Some time later, a deficiency was proposed against the corporation for the year 1941 which resulted in the final closing of its tax liability for that year on the basis of a partial liquidation. After the acquisition of the stock question was raised as to the authority of the corporation under the laws of Canada as a result of which the capital stock of the corporation was reduced on July 7, 1943, and the stock was cancelled. Until that time it had been held by the corporation in its treasury as treasury stock. The parties seem to agree that the issue consists of the sole question of fact "as to whether the transfer of the stock to the corporation was a partial liquidation as contended by the respondent or an outright sale as contended by the petitioner." The solution rests in the intention of the parties as manifested by their acts. See . *291 But "partial liquidation" has a special significance and the intention to cancel and redeem stock may create a partial liquidation out of what might otherwise appear to be an ordinary sale. "* * * the answer to the question whether the distribution by the corporation was in complete cancellation or redemption of a part of its stock must be wholly unaffected by whether or not the transaction could in any view be deemed to have been a sale." . The consequence is that the intention on the part of the corporation, which is the agency normally expected to deal with the stock, becomes a significant, if not the decisive, consideration. Here evidence of that intention is meager, but it is not lacking. From a letter written to the corporation by its Canadian transfer agent we learn that the corporation stated contemporaneously "that such shares are now in the company's treasury and should be so recorded on the stock ledger." It is further stipulated that the stock "was held by it in its treasury as treasury stock until July 7, 1943" or almost two years after its acquisition. We are satisfied from *292 this that the intention with respect to these shares at the time they were purchased from petitioner was that they were to be held as treasury shares and not to be canceled or redeemed. That being so, the transaction was a sale and not a partial liquidation. That the corporation was induced to change its intention at a subsequent time as the result either of the act of Federal taxing authorities or of Canadian counsel, does not alter the nature of the original arrangement. "The character of the transaction must be judged by what occurred when the petitioner surrendered his certificate in exchange for payment." . "Although the fact that there was such retirement after the purchase of the * * * shares of stock certainly is not to be disregarded, we think it clear that the fact that such course was not even suggested or decided upon * * * makes it impossible to regard the sale of the stock by the petitioner as part of any plan or course of action resulting in retirement of stock * * *." . No more decisive is the contention that the corporation was forbidden by *293 Canadian law to acquire and hold its own stock. It was equally forbidden, as appears to be conceded by respondent, to acquire its stock for cancellation except as reduction of its outstanding capital had been approved by the proper authorities. This approval was not sought until some time later and certainly had not been secured when the transaction in question took place. Thus, acquisition for retirement or retention was equally unlawful. The purchase of the stock may have been unauthorized, but it will not do to say that for that reason it should be disregarded, for the result of such a theory would be to eliminate transfer, payment, profit, and tax alike. The corporation unmistakably acquired the stock. That act for any purpose may have been beyond its powers, but the intention to hold the shares in its treasury rather than to retire them which appears unmistakably from the record was no more unlawful than would have been any other accompanying intent. Decision will be entered for the petitioners.